NORMAN DEAN NILSEN,    )
    )
    Plaintiff/Appellee,    )
    )    Appeal No.
    )    01-A-01-9705-CH-00212
VS.    )
    )    Montgomery Chancery
    )    No. 97-01-0102
JENNIFER LEA BLACK,    )
    )
    Defendant/Appellant.    )

**FILED**

November 19, 1997

Cecil W. Crowson
Appellate Court Clerk

## COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE ALEX W. DARNELL, CHANCELLOR

NORMAN DEAN NILSEN
318 6th Avenue S. #117
Seattle, Washington 98104
    Pro Se/Plaintiff/Appellee

GORDON W. RAHN
TROY L. BROOKS
127 South Third Street
Clarksville, Tennessee 37040
    Attorneys for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
BUSSART, J.

# O P I N I O N

The divorced father of a fourteen year old girl filed a Petition for Writ of Habeas Corpus in the Chancery Court of Montgomery County, to compel the mother to return the girl to his physical custody in the state of Washington. The trial court found that custody jurisdiction remained in the state of Washington, and that a prior order of the Washington court had transferred custody to the petitioner. The court accordingly granted the writ. We affirm.

## I.

Norman Dean Nilsen and Jennifer Lea Mills married and became the parents of three girls, Kristine, who was born in 1983, Nicole, born in 1984, and Danielle, born in 1986. By a default judgment, a court in King County, Washington granted the parties a divorce in 1986, gave the wife custody of the children, and ordered the husband to pay child support of $600 per month. In 1990, the parties executed a modification of the divorce decree that lowered the amount of child support to $200 per month. The mother claims that the father never paid any support under either order.

Apparently the father lived (and still lives) with his parents in the state of Washington. There are rooms in the house of his parents for the girls to stay when they visit the father. In July of 1987, the mother married a soldier, Alan Black, and moved with her family to a military base in California. During the Persian Gulf War, Staff Sergeant Black served in Saudi Arabia. In February of 1991, the mother sent the two oldest girls to live with their paternal grandparents, because she was afraid of the effect that demonstrations at the base and security counter-measures might have on them.

In April of 1991, the parties signed another modification, which gave joint custody to the parties, but transferred physical custody to the father. The agreement

also provided that the mother would pay child support of $25 per child per month, and would release the husband from any liability arising from his own failure to pay child support.

The mother testified that the modification was signed in the office of the father's attorney, after a lunch at which the father bought her several drinks. The father maintained that it was signed at the base. The signature of the father's attorney appears on the instrument, as does the signature of a legal assistance attorney with the Department of the Army. The modification was filed in the King County Superior Court, and was made an order of that court on July 12, 1991.

At some point, Sergeant Black was transferred to Fort Campbell, and his family took up residence in Kentucky. In 1994, Nicole moved to Kentucky to live with her mother. Kristine joined her sisters and mother at Ft. Campbell 1n 1996. Her father testified that he only intended for Kristine to have a summer visit. The mother testified that it was Kristine's choice to stay in Kentucky past the end of the summer

The mother took the girls to Washington in October of 1996, on a trip that she claimed was only to visit family members. The husband insisted that the purpose of the trip was to return Kristine to his custody, and he allegedly sent the mother $300 for travel expenses.

Earlier that same year, the husband wrote a letter to his former wife from a jail cell, where he was being held on drug charges. In the letter, he admitted he had a drug problem, and acknowledged several warrants related to his use of illegal drugs. At the hearing of this cause, the mother moved that the letter be entered into evidence. The trial court denied the motion.

By 1997, the mother had moved with her family to Tennessee. On January 23, the father filed his Petition for Writ of Habeas Corpus, asking that both Kristine and Nicole be returned to his custody. The mother answered, arguing that it was in the best interest of the children that the court deny issuance of the writ.

After a hearing, attended by both parties and their attorneys, the trial court ruled as follows:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
>
> 1. This court recognizes the prior court order entered in Washington in 1991 that transfers custody to the Petitioner. The parties acknowledge that the youngest child has never lived with the Petitioner, and that this part of the court order does not apply. The custody jurisdiction remains in the State of Washington.
>
> 2. Kristie Nilson shall return to Washington with the Petitioner. He shall pick her and her sisters up at 2:30 p.m. today and return them at 8:30 p.m. He shall then pick Kristie up at 1:00 p.m. tomorrow. These exchanges shall take place in the parking lot at Dairy Queen on Riverside Drive in Clarksville.
>
> 3. The parties agreed in 1994 that Nicole would come to Fort Campbell to live with Respondent. Since the parties agreed to this, this Court will not change their agreement based upon a court order entered prior to the agreement. This issue is reserved for Washington to determine.
>
> Entered this the 24th day of January, 1997.

This appeal followed.

## II.

The appellant has prepared a well-written brief, presenting the following issues to this court:

> 1. Did the trial court err in not considering the best interests of the child?
> 2. Did the trial court err in not admitting into evidence a

handwritten letter from the appellee?
3. Did the trial court err in enforcing the 1991 modification entered into by the appellant and appellee?

The appellant argues that Kristine's interest is best served by remaining with her mother; that the letter in question contains evidence of the unfitness of the father to exercise custody; and that the 1991 custody modification was an unconscionable bargain that should not have been enforced by any court.

We believe, however, that the Uniform Child Custody Jurisdiction Act of 1979 (UCCJA), Tenn. Code Ann. § 36-6-201 et seq., is dispositive of this case, and that it pretermits all three issues raised by the appellant. A Tennessee court may not make a determination as to the best interests of a child or the validity of an agreement modifying a child custody order issued by another state, unless it has jurisdiction and can meet the requirements of the UCCJA for exercise of that jurisdiction.

The Act is designed ". . . with the express intent of eliminating interstate competition over custody matters, child-snatching, and unauthorized holdovers following authorized visitation periods." *Brown v. Brown*, 847 S.W.2d 496 (Tenn. 1993). It seeks to "make uniform the laws of those states which enact it," Tenn. Code Ann. § 36-6-201(a)(9). Every state that has adopted the Act (and it has been adopted by all fifty states, the District of Columbia, and the U.S. Virgin Islands) is required to recognize and enforce the custody determinations of other states:

> **36-6-214. Recognition and enforcement of foreign decree. --** The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this part or which was made under factual circumstances meeting the jurisdictional standards of this part, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this part.

Under certain circumstances, the Tennessee courts may modify a decree that was originally rendered in another state:

> **36-6-215. Modification of foreign decree.--** (a) If a court of another state has made a custody decree recognizable and enforceable under § 36-6-213, a court of this state shall not modify that decree unless:
>
> (1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree; and
>
> (2) The court of this state has jurisdiction.

Thus, although it might be argued that Tennessee has obtained custody jurisdiction over Kristine Nilsen by becoming her home state, see Tenn. Code Ann. § 36-6-203(a)(1), Tennessee is not entitled to exercise that jurisdiction unless it can also be shown that Washington State has lost jurisdiction, or has declined to exercise the jurisdiction it retains. "The language could not be plainer. Jurisdiction simply shall not be exercised, even though Tennessee has become the 'home state,' except in accordance with the Code section cited." See *State ex rel Cooper v. Hamilton,* 688 S.W.2d 821, 824 (Tenn. 1985).

The appellant cites a number of Tennessee cases which she claims stand for the proposition that in proceedings involving child custody, the strict legal rights of the parties must be subordinated to the best interests of the children. *State ex rel Daugherty v. Rose,* 71 S.W.2d 685 (Tenn. 1934); *Cecil v. State ex rel Cecil*, 237 S.W.2d 558 (Tenn. 1951). However to the extent that these cases conflict with the UCCJA, they have of course been overruled by the Legislature.

Lest the reader of this opinion believe that the UCCJA offers no recourse in situations where enforcement of an out-of-state judgment would endanger the welfare of a child, we refer them to another part of the Act:

**§ 36-6-204. Temporary decrees -- Obtaining permanent custody decree. --** (a) A court of this state which is competent to decide child custody matters has limited jurisdiction to suspend temporarily enforcement of an existing decree and to make a temporary decree for a period not longer than sixty (60) days if the child is physically present in this state and:

(1) The child has been abandoned; or

(2) It is necessary in an emergency to protect the child because the child has been subjected to or is immediately threatened with serious harm to life or with serious bodily injury.

(b) In order to obtain a permanent custody decree, the petitioning party shall file in a state which has jurisdiction as set out in § 36-6-203.

However the appellant has not asked for relief under Tenn. Code Ann. § 36-6-204, and this does not appear to be an appropriate case for such relief. The above-quoted statute does grant Tennessee the power to act to protect an endangered child who is physically present in the state, but we note that section (b) further underlines the primacy of the original rendering state if a permanent change of custody is desired.

## III.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Montgomery County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

- 7 -

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

- 8 -

_____
WALTER W. BUSSART, JUDGE