COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

February 27, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

MICHAEL EUGENE COPAS,    ) C/A NO. 03A01-9708-CV-00375
    )
    Plaintiff-Appellee, )
    )
    )
    )
v.    ) APPEAL AS OF RIGHT FROM THE
    ) SEVIER COUNTY CIRCUIT COURT
    )
    )
    )
    )
JULIE MARIE COPAS,    )
    ) HONORABLE BEN W. HOOPER, II,
    Defendant-Appellant.) JUDGE

For Appellant

RICHARD T. WALLACE
Ogle & Wallace, P.C.
Sevierville, Tennessee

For Appellee

DWIGHT E. STOKES
Galyon & Stokes
Sevierville, Tennessee

O P I N I O N

REVERSED AND REMANDED    Susano, J.

This is a divorce case. However, the issues presented for our review pertain solely to the jurisdiction of the trial court to hear and determine an interstate child custody dispute under the Uniform Child Custody Jurisdiction Act ("UCCJA"). The trial court held that it had jurisdiction under the Tennessee version of the UCCJA to decide custody and visitation issues pertaining to the parties' only child, Carver Michael Copas ("Carver"). The child's mother, the defendant Julie Marie Copas ("Mother"), appealed, arguing that the trial court lacked jurisdiction under T.C.A. § 36-6-201, *et seq.*, the Tennessee version of the UCCJA, to address such custody and visitation issues. Alternatively, Mother argues that the trial court erred in failing to communicate with the Florida trial court where Mother had sought a divorce and custody of Carver. She claims that the Tennessee court was required by the provisions of T.C.A. § 36-6-207(c) to communicate with the Florida court. We find Mother's first issue to be dispositive of this appeal.

I. *Procedural History*

Michael Eugene Copas ("Father") filed a complaint for divorce in the trial court on April 6, 1995. Five days later, on April 11, 1995, Mother filed a "Petition for Dissolution of Marriage" in the Circuit Court for Collier County, Florida. Both pleadings asked for custody of Carver. When Father's complaint was filed in Tennessee, Carver was 71 days old, having been born on January 25, 1995.

2

In the instant case, Mother filed a motion to dismiss, which, among other things, questioned the trial court's jurisdiction to address issues pertaining to Carver's custody. It was, and is, Mother's position that the trial court lacked jurisdiction under the pertinent provisions of T.C.A. § 36-6-201, *et seq.*, to resolve such custody issues. Each of the parties filed "matters outside the pleadings" that were considered by the trial court. *See* Rule 12.03, Tenn.R.Civ.P. Thus, the motion was properly treated as a motion under Rule 56, Tenn.R.Civ.P. *See* Rule 12.03, Tenn.R.Civ.P.

Following a hearing on June 9, 1995, the trial court denied Mother's motion. In so doing, it found that Tennessee was the "home state" of Carver "as defined by T.C.A. [§] 36-6-203."

The instant case was finally concluded following a hearing on the merits on February 13, 1997. The court reiterated its ruling that it had subject matter jurisdiction to decide issues pertaining to Carver's custody:

> The Court further finds that the Court is more convinced than ever after hearing the proof in this cause...that this is the proper jurisdiction to address the issues of child custody and support, and therefore the defendant's motion to re-address the issue is again overruled.

By order entered April 17, 1997, the trial court declared the parties divorced; confirmed its earlier decree awarding the parties joint custody of Carver with Mother as residential

3

custodian, subject to Father's specified visitation rights; and addressed other issues not germane to this appeal.

## II. *Facts*

The parties were married in Sevier County on November 22, 1993. In November, 1994, they went to Naples, Florida. As recited in Father's response to Mother's motion to dismiss, the trip was made

> for the purpose of allowing [Mother] to be close to her mother during the final phase of pregnancy.

Carver was born in Naples on January 25, 1995.

Father returned to Sevier County in February, 1995. Mother remained in Florida with the parties' child. The parties agree on this appeal that Mother had planned to return, with her infant son, to Tennessee to join Father, but there is a dispute as to when this was to have occurred.

After Father returned to Tennessee, certain "long distance" domestic disputes arose between the parties, resulting in the divorce filings mentioned earlier in this opinion. Carver continued to live in Florida with Mother, and was living there at the time of the trial below.

## III. *Standard of Review*

4

In this non-jury case, the record of the trial court's proceedings comes to us with a presumption of correctness as to the trial court's factual findings. We must honor this presumption "unless the preponderance of the evidence is otherwise." Rule 13(d), T.R.A.P. The trial court's conclusions of law are not accorded the same deference. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## IV. *Pertinent Law*

In 1979, Tennessee enacted its version of the UCCJA, now codified at T.C.A. § 36-6-201, *et seq*. The UCCJA was originally promulgated by the Uniform Commissioners

> with the express intent of eliminating interstate competition over custody matters, child-snatching, and unauthorized holdovers following authorized visitation periods.

*Brown v. Brown*, 847 S.W.2d 496, 499 (Tenn. 1993). As the instant case demonstrates, the UCCJA has not always had its intended effect.

The following provisions of the Tennessee version of the UCCJA are pertinent to the facts of this case:

### T.C.A. § 36-6-202

As used in this part:

\* \* \*

5

(2) "Custody determination" means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person;

(3) "Custody proceeding" includes proceedings in which a custody determination is one (1) of several issues, such as an action for divorce or separation, and includes habeas corpus proceedings, but specifically excludes Interstate Juvenile Compact matters and other proceedings pursuant to title 37, except proceedings to determine custody pursuant to § 37-1-104 and pursuant to § 37-1-103 as to dependent and neglected children when an original party or person acting as a parent files the petition or when the petition involves facts arising from another state;

\*     \*     \*

(5) "Home state" means the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned.  Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period;

\*     \*     \*

T.C.A. § 36-6-203

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(A) Is the home state of the child at the time of commencement of the proceeding; or

(B) Had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(2)(A) It appears that no state has jurisdiction under subdivision (a)(1), or each state with jurisdiction under subdivision (a)(1) has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child; and

(B) The child and at least one (1) contestant have a significant connection with this state; and

(C) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationship; and

(D) It is in the best interest of the child that a court of this state assume jurisdiction; or

(3) It appears that no state has jurisdiction under subdivision (a)(1) or (2) or each state has refused jurisdiction on the ground that this is the more appropriate forum to determine child custody, and it is in the best interest of the child that a court of this state assume jurisdiction.

*    *    *

V.  *Analysis*

In the landmark case of **Brown v. Brown**, 847 S.W.2d 496 (Tenn. 1993), the Supreme Court pointed out that under the Tennessee version of the UCCJA, "jurisdiction exists in only one state at a time." **Id**. at 501. In **Brown**, the Supreme Court clearly explained the appropriate jurisdictional analysis to be undertaken by a trial court:

If Tennessee is *not* the child's "home state," a Tennessee court may assume jurisdiction only upon a finding that *no other state qualifies* as the child's "home state," or that the "home state" has declined to exercise jurisdiction and deferred to Tennessee as "the more appropriate forum to

7

> determine the custody of the child." T.C.A.
> § 36-6-203(a)(2)(A) and (3).

*Id*. at 500 (emphasis in **Brown** opinion).

In the instant case, when Father filed his complaint for divorce in Tennessee on April 6, 1995, the minor child, whose custody is at issue in this case, was less than six months old. In fact, he was only 71 days old. Thus, when Father undertook to invoke the jurisdiction of the trial court in the instant case, he did so at a time when Florida was the child's "home state" *as that concept is defined in T.C.A. § 36-6-202(5)*. We find this to be the inescapable interpretation of subsection (5) of T.C.A. § 36-6-202, since that code provision provides that "in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned"[1] is the child's "home state." Florida law is to the same effect. *See* § 61.1306(5), Fla.Stat.

It is obvious from the context of T.C.A. § 36-6-202(5) that the language -- "the state in which the child lived" -- pertains to the actual place of residence, as opposed to the broader concept of domicile. Therefore, under the UCCJA, the *domicile* of Carver and his parents during the child's 71 days of existence is not the significant area of inquiry. What is important is the fact that the child *lived,* during this critical statutory period, in the State of Florida.

---

[1]The "persons mentioned" are the "child's parents, a parent or a person acting as parent." *See* T.C.A. § 36-6-202(5).

8

Father relies upon the last sentence of T.C.A. § 36-5-202(5) -- "[p]eriods of temporary absence of any of the named persons are counted as part of the six (6) months or other period" -- to support his position that the child's "home state" is Tennessee. His argument in this regard is not entirely clear. Specifically, it is unclear *whose* "temporary absence" he is relying upon and how that "temporary absence" impacts the "home state" analysis under T.C.A. § 36-5-202(5). If he is arguing that Mother established a domicile in Tennessee prior to the birth of the parties' child and that her stay in Florida was a "temporary absence" from that domicile, we do not understand the last sentence of T.C.A. § 36-5-202(5) to mean that her absence from Tennessee prevents Florida from being the place where the child lived during the critical period just prior to the commencement of the proceedings in this case. On the other hand, if Father is claiming that Carver had a "temporary absence" from Tennessee, such a position is untenable in view of the fact that Carver has *never* lived in Tennessee. We do not understand how a person can have an absence from a state, temporary or otherwise, if that person has never lived in that state. In any event, we believe that Father misconstrues the import of the quoted language. That language permits a "temporary absence" to be "counted as a *part* of" the relevant period. (Emphasis added). The language does not permit a "temporary absence" to be *subtracted* from the "six (6) months or other period." The facts of this case simply do not bring into play the quoted language under discussion.

9

Husband argues that the evidence clearly indicates that the parties were domiciles of Tennessee during the entirety of their marriage.  He points to the substantial evidence in the record reflecting the parties' contacts with Tennessee.  He argues that a "rigid interpretation" of T.C.A. § 36-6-202(5) "would defeat the purposes of the UCCJA."  He contends that

> [i]t is ludicrous to suggest that the UCCJA can be so easily circumvented so that an incidental birth in another state or one planned in another state for short term convenience can outweigh all other substantial commitments with the state of residence.

We believe that Husband's arguments miss the mark.

The term "home state" is a term of art under the UCCJA and its federal counterpart, the Parental Kidnapping Prevention Act.  It has a very specific meaning under the state and federal legislative schemes pertaining to interstate custody disputes.  A court is required to apply that very specific meaning to such disputes.  A court is not at liberty to apply a definition of home state that is at odds with the statutory definition.  Thus, a court cannot utilize a layman's definition of home state or a definition that equates home state with domicile or significant contacts if to do so is to ignore the clear statutory definition.  The UCCJA contains a "home state" analysis, which focuses on the place where the child lived during the pertinent period rather than the place where a parent has significant contacts.

Contrary to Father's assertion, our construction of the UCCJA does not have the effect of encouraging a parent to go to a

10

state with absolutely no custody contacts in order to defeat the jurisdiction of a state with substantial contacts with the child. In the first place, we are not dealing, in this case, with a state that has no custody contacts. On the contrary, there are many witnesses in Florida whose testimony is relevant to the issue of custody. Furthermore, it should be noted that Father's fear that a state with no custody contacts will be inclined to decide custody, is addressed in the language of the UCCJA itself. That statutory scheme sets up a mechanism by which a state, which is the "home state" of a child under T.C.A. § 36-6-202(5) or its UCCJA counterpart, can and should defer to a state that "is the more appropriate forum to determine the custody of the child." *See* T.C.A. § 36-6-203(a)(2)(A) and (3). Certainly, our decision should not be read as suggesting that a state with no real custody witnesses or other relevant evidence should embrace a custody determination based solely on a rigid interpretation of the definition of "home state" when a state that is more appropriate for such a determination is willing to assume jurisdiction. In any event, we are not faced with that situation in this case.

Tennessee does not qualify as Carver's "home state" under the provisions of T.C.A. § 36-6-203(a)(1). As previously noted, Florida does. Since Florida has clearly expressed its willingness to exercise jurisdiction in this case, it is likewise clear that Tennessee cannot address custody issues pertaining to Carver under T.C.A. § 36-6-203(a)(2)(A) and (3). Florida's willingness to act is reflected in the ruling of the Honorable Hugh D. Hayes, Judge of the Collier County, Florida, Circuit

11

Court, pronounced on May 15, 1997, which we have considered pursuant to Mother's motion to consider post-judgment facts under Rule 14, T.R.A.P.  However, even if we were to ignore this subsequent ruling, there is nothing in the record that affirmatively reflects that a Florida court had ever *refused* to exercise jurisdiction based on a finding that Tennessee is "the more appropriate forum to determine...custody."  This is important because such a finding is required to trigger jurisdiction under T.C.A. § 36-6-203(a)(2)(A) and (3).  We recognize that the Florida trial court did decide, at an earlier time -- and after the judge in the instant case had declared that he had jurisdiction to make a custody determination -- that it should defer to Tennessee; but that decision of the Florida trial court was based upon its erroneous determination that the Tennessee court had acted in "substantial conformity" with the UCCJA.  Significantly, that earlier judgment of the Florida court was *not* predicated on the "more appropriate forum" rationale contemplated by T.C.A. § 36-6-203(a)(2)(A) and (3).

It should be noted that the earlier judgment of the Florida trial court was reversed by the Florida Court of Appeals, Second District, in an opinion filed January 29, 1997.[2]  In that opinion, the Florida Court of Appeals held that the Florida trial court erred in deferring to the Tennessee proceedings.  This was held to be error because, according to the Florida appellate court, the decision of the Florida trial court was based on the erroneous conclusion that Tennessee was Carver's "home state."

---

[2]The opinion of the Florida Court of Appeals was called to the attention of the trial court in the instant case before the latter court held its final hearing on February 13, 1997.

As we have previously indicated, following the decision of the Florida appellate court, the Florida trial court expressed its willingness to exercise its custody jurisdiction in this case. A transcript of that ruling is in the record before us. Even though that decision was made after the entry of the final judgment in the instant case, we have considered it solely as evidence of the fact that the Florida trial court has expressly indicated its willingness to exercise its custody jurisdiction, a fact that is clear from the transcript.

Since the trial court was without jurisdiction to make a "custody determination" as defined in T.C.A. § 36-6-202(2), it results that so much of the trial court's judgment as addresses custody and visitation issues pertaining to Carver Michael Copas is hereby reversed. Costs on appeal are taxed to the appellee. This case is remanded to the trial court for enforcement of the remainder of the judgment and for the collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.

13