[No. A065312. First Dist., Div. Two. Jan. 5, 1995.]

DEE ANNA BROSSOIT, Plaintiff and Appellant, v.
LAWRENCE D. BROSSOIT et al., Defendants and Respondents.

**COUNSEL**

John T. Schreiber for Plaintiff and Appellant.

Marion Brossoit for Defendants and Respondents.

## Opinion

**KLINE, P. J.**—Dee Anna M. Brossoit, the mother of the two children who are the subjects of this proceeding, appeals from an order declining to exercise jurisdiction over her motion to modify child custody. She contends the trial court erred in leaving it to the courts of Tennessee, where her children now live with their paternal grandparents, to determine the merits of the custody issue.

### Statement of the Case and Facts

The marriage of appellant and Lawrence Brossoit was dissolved on March 24, 1987. The judgment of dissolution ordered joint legal custody of the couple's two minor sons, with primary physical custody to the husband and reasonable visitation rights to appellant. Since 1987, the children have lived with their paternal grandmother, Marion Brossoit, who assumed their care.

In 1991, appellant filed an application for an order to show cause for modification of child custody, seeking to obtain physical custody of the children, and obtained a temporary restraining order prohibiting the grandmother from removing the children from the state. The grandmother did not leave the state and the matter was apparently not pursued.

On March 12, 1993, appellant filed another application for an order to show cause for modification of child custody and again obtained a temporary restraining order prohibiting the grandmother from removing the children from the state. According to appellant's declaration, at the time the court ordered primary physical custody to the children's father, appellant did not have sufficient means or earning capacity to provide a home for them and felt they would be better off with their grandmother; since that time appellant had continued her education and obtained the skills necessary to provide a stable home for the children; the children's father had not lived with them since 1987 or provided for their support, had several criminal convictions, was on probation, had not held a steady job for over five years, had no permanent residence, was on state aid, and had a history of violence against appellant; the children had been on Aid to Families with Dependent Children since July 1989, with appellant paying monthly reimbursement to the county; the grandmother had informed appellant she was moving to Tennessee on or before March 19, 1993, and the children would remain on state aid if they moved with her. A subsequent declaration filed in January 1994 added that appellant's former husband caused her to lose her job in 1987 by harassing her at her work place and attacking with a knife store employees who tried to keep him away from her; her former husband and his sister, who

lived with the children in Tennessee, had each been convicted of many crimes; appellant had maintained constant contact with her children during the time they lived with the grandmother and had had substantial involvement in the children's schooling, including making presentations at their school and assisting on field trips; appellant was earning approximately $40,000 annually and was ready and willing to support and care for the children; and appellant was concerned about her children being raised by the grandmother, all of whose own children, appellant claimed, had grown up to be criminals, alcoholics and drug abusers who did not work.

According to appellant's declaration, she had spoken with the grandmother by telephone on the day she filed her petition for custody in March 1993 and informed her the temporary restraining order had been issued. Appellant was unable to serve the grandmother because the grandmother left for Tennessee with the children "very shortly" after this conversation.

On December 13, 1993, having previously been unable to locate her former husband to serve him, appellant filed another application for an order to show cause to modify child custody. The hearing date was set for December 21, 1993.

On December 20, 1993, the grandmother filed a petition for guardianship of the children in Tennessee. The petition did not mention the California custody case. Also on December 20, 1993, the grandmother signed a declaration in the California case. In her declaration, the grandmother stated that the children had lived with her since January 1987 and in Tennessee since March 1993; a guardianship action had been filed in Tennessee; appellant had known in advance that the children were moving to Tennessee, had the ability to telephone them, and was to have a visit with them from December 26 through January 3; appellant did not telephone the boys often and had canceled a visit with them the previous summer; appellant in 1991 had terminated after three weeks a trial arrangement under which the boys spent a few days a week with her and in 1992 had agreed the grandmother should adopt the boys. The grandmother believed appellant was moving for a change in custody because she did not want to pay support for the children.

In a January 10, 1994, declaration, the grandmother added to the above recitation that she had taken the children for a visit with appellant on the weekend before their move to Tennessee; appellant had not advised her of the existence of any restraining order; the children had told her after the visit that appellant had told them she had papers she could sign to keep them from going to Tennessee and asked if they wanted to move or stay with appellant; and the children had said they refused to live with appellant. The grandmother further stated that appellant had canceled the visit scheduled to begin

on December 26, 1993, had often gone months without contact with the children and had never seen the children's report cards, attended teacher conferences or gone on field trips with their school.

At the December 21, 1993, hearing in California, appellant's former husband informed the court of the Tennessee guardianship proceeding and the case was continued until the following day to enable the court to contact the Tennessee court. On December 22, 1993, after speaking with the Tennessee judge and learning that the guardianship proceeding was set for hearing on January 13, 1994, the referee hearing the California case as judge pro tempore continued the matter until January 20, 1994, and set a briefing schedule, instructing the parties to file their points and authorities in both courts simultaneously.

On January 13, 1994, the Tennessee court granted the guardianship petition, finding that the petition was unopposed after notice to the parents; Tennessee was the "home state" of the children and had subject matter jurisdiction; and the guardianship was in the best interests of the children.

On January 20, 1994, the California judge read into the record a letter to the Tennessee judge confirming a conversation of the previous day. The Tennessee court had indicated its decision that Tennessee was the children's home state was based on the belief that California had declined to exercise its continuing custody jurisdiction and the fact that the parents had not filed opposition to the petition. The California judge had explained that she had not previously received points and authorities or reached decision on the jurisdictional question. The California court concluded that (1) California had continuing jurisdiction over the custody issue; (2) this continuing jurisdiction was exclusive; (3) under Tennessee law California appeared to have home state jurisdiction as there were ongoing proceedings in California when the Tennessee guardianship petition was filed; (4) Tennessee was the more convenient forum because the children had lived continuously with the grandparents in California from January 1987 to March 1993 and in Tennessee from March 1993 to the present, Tennessee had closer connections with the children and Tennessee was better able to obtain substantial evidence regarding the children's present and future care, protection, training and personal relationships; and (5) California should decline to exercise its continuing jurisdiction because it was in the children's best interest for Tennessee to assume jurisdiction. The court noted that its decision to decline to exercise jurisdiction was also based upon the Tennessee judge's assurance that appellant would be able to make an appearance in the Tennessee action and that if she requested reconsideration of the custody issue the Tennessee court would grant a rehearing and order a home study of the children,

grandparents and parents. The court's findings and order after hearing were filed on February 1, 1994.

Appellant filed a timely notice of appeal on March 31, 1994.[1]

### DISCUSSION

The determination of which state can and should exercise jurisdiction to determine the custody of the children in the present case is governed by the Uniform Child Custody Jurisdiction Act (UCCJA) (Fam. Code, § 3400 et seq. [Civ. Code, former § 5174 et seq.]; Tennessee Code Annotated (T.C.A.) § 36-6-201 et seq.; and the Parental Kidnapping Prevention Act (PKPA) 28 U.S.C.A. § 1738A).[2] The purposes of the UCCJA include avoiding competition and conflict for jurisdiction between courts of different states; promoting cooperation with courts of other states so that a custody decree is rendered in the state that can best decide the case in the interest of the child; assuring that litigation concerning child custody take place in the state with the closest connection to the child and child's family; discouraging continuing controversies over child custody; deterring abductions and other unilateral removals of children undertaken to obtain custody awards; avoiding relitigation of custody decisions of other states; facilitating enforcement of other states' custody decrees; and promoting the exchange of information and mutual assistance between courts concerned with the same child. (Fam. Code, § 3401 [Civ. Code, former § 5150].) The PKPA was enacted in 1980 to resolve problems of jurisdictional deadlock that remained even after most states had adopted the UCCJA. (*Wallace* v. *Superior Court* (1993) 15 Cal.App.4th 1182, 1186 [19 Cal.Rptr.2d 157]; see *Brown* v. *Brown* (Tenn. 1993) 847 S.W.2d 496, 499.) Where the provisions of the statutes differ, the federal act preempts state law. (*Wallace* v. *Superior Court, supra*, 15 Cal.App.4th at p. 1186; *In re Marriage of Pedowitz* (1986) 179 Cal.App.3d 992, 999 [225 Cal.Rptr. 186].) Because an adjudication under the UCCJA requires subject matter jurisdiction, this court is not bound by the trial court's findings and may independently weigh the jurisdictional facts. (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [271 Cal.Rptr.

[1]In a request for judicial notice filed on December 7, 1994, appellant informed this court of developments in the case since the time the briefs were filed. We have granted the request for judicial notice and are aware that appellant filed a motion for relief from the Tennessee judgment on July 17, 1994; a hearing on appellant's motion was set for September 1, 1994; and, on September 1, 1994, the Tennessee court entered an "Agreed Order" specifying that the hearing would be continued to January 12, 1995, and that during the period of continuance the grandmother could bring no proceeding to enforce the guardianship and custody order of January 13, 1994. Appellant's counsel represents that the children are presently with appellant in California and will remain with her at least through the January 12, 1995, hearing date.

[2]Guardianship proceedings are custody proceedings governed by the UCCJA. (*Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 487-489 [223 Cal.Rptr. 707].)

624]; *In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 870 [225 Cal.Rptr. 823].)

Under the UCCJA as adopted in both California and Tennessee, "[a] court of this state shall not exercise its jurisdiction under this part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." (Fam. Code, § 3406, subd. (a) [Civ. Code, former § 5155]; T.C.A. § 36-6-207, subd. (a).) "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." (Fam. Code, § 3414, subd. (a) [Civ. Code, former § 5163]; T.C.A. § 36-6-215, subd. (a).)[3]

To the same effect, under the PKPA, "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." (28 U.S.C.A. § 1738A(f).) "A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." (28 U.S.C.A. § 1738A(g).)

Under the UCCJA as adopted in California, a court has jurisdiction to make a child custody determination by initial or modification decree if one of a number of conditions is met, including, "(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody of the child or for other reasons, and a parent or person acting as parent continues to live in this state. (2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is

---

[3]The California and Tennessee statutes are identical except that the Tennessee one inserts the phrase, "recognizable and enforceable under section 36-6-213" after "custody decree" in the first sentence.

available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . ." (Fam. Code, § 3403 [Civ. Code, former § 5152].) "Home state" is defined as "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." (Fam. Code, § 3402, subd. (e) [Civ. Code, former § 5151].) "Physical presence of the child, while desirable, is not a prerequisite of jurisdiction to determine the custody of the child." (Fam. Code, § 3403, subd. (c) [Civ. Code, former § 5152].)

The UCCJA as adopted by Tennessee differs from the California statutes in that Tennessee may exercise jurisdiction based upon "significant connection" with the child only if there is no "home state" or if the "home state" defers to Tennessee. (*Brown* v. *Brown, supra,* 847 S.W.2d at p. 501; T.C.A. § 36-6-203, subd. (a)(2) and (3).) Tennessee's UCCJA employs the same definition of "home state" as California's. (847 S.W.2d at p. 500; T.C.A. § 36-6-202, subd. (5).) According to Tennessee case law, where another state has issued a custody decree and there are ongoing proceedings in that state at the time a custody proceeding is initiated in Tennessee, the phrases "commencement of the proceeding" and "time involved" in the statutes providing for jurisdiction based on being the child's "home state" refer to the filing of the original custody proceeding and not to the filing in Tennessee. (*Wilcox* v. *Wilcox* (Tenn.App. 1993) 862 S.W.2d 533, 543.)

In the present case, the original custody decree was issued by the California court at the time of appellant and her former husband's divorce in 1987. Appellant obtained temporary restraining orders relating to the children in 1991 and again in 1993. Shortly after issuance of the temporary restraining order in March 1993, the grandmother moved with the children to Tennessee; the evidence in the record is conflicting as to whether the grandmother was aware of the order prohibiting her from so doing. On December 13, 1993, appellant filed another application for an order to show cause for modification of child custody, having previously been unable to give notice of the proceeding to her former husband. The hearing date was set for December 21, 1993.

At the time the grandmother filed her petition for guardianship in Tennessee on December 20, 1993, there were thus ongoing proceedings in the California custody matter. The grandmother necessarily was aware of these proceedings, as she signed a declaration in the California case on the same

date that she filed the guardianship petition. The petition for guardianship, however, did not mention the California action.

■ When the California court learned of the Tennessee case, it acted properly in staying the matter pending consultation with the Tennessee court. (Fam. Code, § 3406 [Civ. Code, former § 5155].) The California court also properly determined that California had continuing jurisdiction over the custody issue by virtue of the 1987 decree. Where one state has issued a custody decree, " 'the continuing jurisdiction of [that] court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 [the provision of the UCCJA limiting jurisdiction to modify another state's custody decree, codified as Fam. Code, § 3414, subd. (a) (Civ. Code, former § 5163) and T.C.A. § 36-6-215, subd. (a))] is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered. . . . [¶] Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*' " (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 696 [186 Cal.Rptr. 772, 652 P.2d 1003], quoting Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA* (1981) 14 Fam. L.Q. 203, 214-215, italics in *Kumar*.) In the present case, both parents remained in California, where the children had spent their entire lives prior to March 1993.

■ Moreover, at the time the petition for guardianship was filed, the Tennessee court did *not* have jurisdiction to modify the California decree. As earlier indicated, Tennessee had jurisdictional authority to modify the California decree only if it was the children's home state or had a significant connection with the child *and* no other state was the home state or the home state had declined to exercise jurisdiction and deferred to Tennessee. (T.C.A. § 36-6-203.) As we have also previously pointed out, and as the trial court found, under Tennessee case law, California, not Tennessee was the children's home state: Since there were ongoing proceedings in the California custody action, Tennessee case law defined "home state" as the "home state" at the time the original custody proceeding was filed. (*Wilcox* v. *Wilcox*, *supra*, 862 S.W.2d at p. 543.) At the time the petition for guardianship was filed and the Tennessee court granted the petition, California had not declined to exercise jurisdiction. Under both the UCCJA and PKPA, Tennessee

thus lacked jurisdiction to modify the California decree. (T.C.A. § 36-6-215, subd. (a); 28 U.S.C.A. § 1738A(f).)

■ What the California trial court did in the present case, in effect, was to confer jurisdiction retroactively upon the Tennessee court by declining to exercise its own jurisdiction. We find, however, that the California court abused its discretion in declining to exercise jurisdiction upon finding Tennessee to be a more convenient forum as defined by the UCCJA. (*Peiri v. Superior Court* (1991) 1 Cal.App.4th 114, 122 [1 Cal.Rptr.2d 742]; *In re Marriage of Fox, supra*, 180 Cal.App.3d at p. 870; *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1019 [202 Cal.Rptr. 490].)[4]

■ Family Code section 3407, subdivision (a), provides that a court may decline to exercise its jurisdiction any time before making a decree "if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Factors to be used in determining whether a state is an inconvenient forum include another state being currently or recently the child's home state, another state having a closer connection with the child and child's family or child and one or more of the contestants, "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" being more readily available in another state, the parties agreeing on another forum that is no less appropriate, and the exercise of jurisdiction contravening any of the purposes of the UCCJA. (Fam. Code, § 3407, subd. (c) [Civ. Code, former § 5156]; *In re Marriage of Fox, supra*, 180 Cal.App.3d 862, 873.)

■ The trial court found that Tennessee had "closer connections with the children" and was "better able to obtain substantial evidence regarding the children's present and future care, protection, training, and personal relationships." It did not explain the factual basis for this conclusion.

In *Plas* v. *Superior Court, supra*, 155 Cal.App.3d 1008, the parties lived and were married in France, the mother (an American citizen) became a French resident, and the child was born in France in December 1979. The mother and child spent Thanksgiving through New Year's in 1980 and 1981 with the mother's parents in California. They went to California again in November 1982 and in February 1983 the mother told the father they were not returning to France. After reconciliation efforts failed and the father attempted to take the child back to France without the mother's knowledge,

---

[4]Application of the inconvenient forum doctrine has been limited to situations where at least two states concurrently had jurisdiction. (*In re Marriage of Fox,* 180 Cal.App.3d at p. 873.)

the mother filed a petition for legal separation in California and obtained an order giving her temporary custody of the child. The father shortly thereafter filed divorce proceedings in France. After proceedings in California in which the father contested jurisdiction, the California court decided it had jurisdiction and refused to stay its proceedings pending resolution of the ones in France. The French court awarded the father temporary custody of the child. (155 Cal.App.3d at pp. 1011-1013.)

The California court in *Plas* found jurisdiction under the "significant connection" test, based on the facts that at the time of the hearing, the child had been in California for over six months, had commenced an ongoing medical relationship with a pediatrician, had begun attending preschool, and was developing friendships and a close family relationship with his mother's extended family. (155 Cal.App.3d at p. 1015.) ■ Reversing this decision, the appellate court found guidance in interpreting the "significant relationship test" of Family Code section 3403, subdivision (a)(2) (then Civ. Code, § 5152) in the commissioners' note to the corresponding section of the uniform act, which explains that subdivision (a)(2) (jurisdiction based on significant connection with a state) is supplemented by subdivision (b) (physical presence in the state is not sufficient to confer jurisdiction), which was " 'designed to discourage unilateral removal of children to other states and to guard generally against too liberal an interpretation of paragraph [2].' " (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d at p. 1016, quoting Commissioner's Note to § 3, 9 West's Ann. U. Laws (1979) p. 124 [now com. (1988 ed.), p. 145].) "Short-term presence in the state is not enough [to establish a significant connection with the state] even though there may be an intent to stay longer . . . Paragraph [2] perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in [§ 3401]. . . . [I]ts purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." (155 Cal.App.3d at p. 1016.)

The *Plas* court found that the factors relied upon by the trial court were "unexceptional even in the context of short-term presence" and that the court had ignored the facts that France was the place the child had been born and raised and lived exclusively until shortly before the hearing, the only place the parties and child had lived together as a family and the place the father had continuously maintained residence. (155 Cal.App.3d at p. 1017.) *Plas*

held these latter factors were the " 'substantial' and 'significant' connections required by the Act, which California [could] claim only by exaggerating its minimum contacts." (*Ibid.*) Since the factors relied upon to support jurisdiction in California were established after the unilateral removal of the child to the state, the acceptance of jurisdiction was viewed as encouraging the type of conduct the Act was designed to prevent. (*Ibid.*) The court stated, "To sustain the trial court's finding of jurisdiction would simply invite the assumption of jurisdiction in cases based on the most meager of contacts with this state and lead to the emasculation of a statute designed to limit, not proliferate, the instances where jurisdiction could be assumed." (155 Cal.App.3d at p. 1018.)

The *Plas* court went on to hold that even if jurisdiction had been established in that case the trial court should have declined to exercise jurisdiction as an inconvenient forum. (155 Cal.App.3d at p. 1019.) This conclusion was based on the facts that France was the child's home state; France had the closer connection, as the child had lived there until he was almost three years old, the parents were French residents and had been married and lived there before and during the marriage; at least as much evidence regarding the child's present or future care was available in France; and the more relevant evidence pertaining to the custody dispute lay in France. (155 Cal.App.3d at pp. 1019-1020.) The court noted that the question where " 'substantial evidence' " is more readily available depends on the issues in dispute, which in *Plas* included the mental and emotional condition of the father and the living conditions in France.

In the present case, at the time of the hearings in January 1994, the children were 12 and 10 years old, respectively, and had lived with the grandmother for some 7 years. They had been in Tennessee less than a year, having lived all the rest of their lives in California. The parents were divorced in California and both remain residents of this state. Until March of 1993, the grandparents also lived in California.

One of the main issues raised by appellant's request for modification of the custody order is appellant's ability to care for the children. In urging Tennessee is the more convenient forum, the grandmother argues that the following witnesses in Tennessee could provide the court with information about the children's present or future care, protection, training and personal relationships: the grandparents with whom the children reside; the children; the children's teachers and athletic coaches; the children's aunts and uncle, who apparently also moved from California to Tennessee; a family friend from California who lived near the grandparents in Tennessee, and the parents of the children's friends. As discussed in *Plas*, the connections upon

which the grandmother relies were established after her removal of the children to Tennessee and their short-term nature renders them insignificant as compared to the connections established with California during the many years all the parties lived in this state.

Inexplicably, the grandmother (representing herself on this appeal) maintains that the evidence is "undisputed." To the contrary, the evidence appears to be entirely conflicting as to whether appellant is a fit mother, what contact she has had with her children over the years they have been cared for by the grandmother, whether the aunts and uncle involved in the children's care are responsible people, and whether the grandmother had knowledge of the California court's order prohibiting her from removing the children from the state. The trial court apparently made no findings on any of these issues. If the grandmother had known of the restraining order and taken the children to Tennessee in defiance of that order, this would be an additional reason the California court should not have declined jurisdiction. (See Fam. Code, § 3408 [Civ. Code, former § 5157] [jurisdiction declined because of petitioner's wrongful conduct], Fam. Code, § 3407, subd. (c)(5) [Civ. Code, § 5156] [jurisdiction declined because exercise of jurisdiction would contravene any of the purposes of the UCCJA].) If in fact appellant has been as uninvolved in her children's lives as the grandmother claims, and instituted the present custody proceedings in order to avoid paying child support, as grandmother also claims, such considerations will bear upon the determination of the merits of the custody dispute. Whatever the ultimate outcome of that dispute, the trial court abused its discretion in declining to exercise jurisdiction over the matter.

The judgment is reversed and the matter remanded for proceedings consistent with this opinion.

Phelan, J., and Haerle, J., concurred.