[No. A077089. First Dist., Div. Three. Apr. 9, 1998.]

In re the Marriage of SUSAN and SAMUEL TORRES.
SAMUEL TORRES, Respondent, v.
SUSAN TORRES, Appellant.

COUNSEL

Freda D. Pechner for Appellant.

William M. Hilton for Respondent.

OPINION

PHELAN, P. J.—

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Susan Torres (Ms. Torres) and respondent Samuel Torres (Mr. Torres) are the parents of Simon Torres (Simon), born February 4, 1988, and Matthew Torres (Matthew), born May 18, 1991. The family was evicted from their home in California on April 1, 1994. On or about April 8, 1994, Ms. Torres and the children moved to Pennsylvania, where Ms. Torres's mother and other family members reside. Both children lived in California from birth until they moved to Pennsylvania.

On June 24, 1994, Mr. Torres filed the following documents in the Superior Court of Alameda County: a petition for dissolution of marriage, which included a request that legal and physical custody of Simon and Matthew, then six and three years old, be awarded to him; a schedule of assets and debts; an order to show cause for child custody and visitation, which included a summons for Ms. Torres to appear in court for a hearing on July 14, 1994; a supporting declaration and a request for an ex parte order that Ms. Torres be required to return to California with the children; and a declaration under the Uniform Child Custody Jurisdiction Act (UCCJA)

(Fam. Code, § 3400 et seq.).[1] Mr. Torres filed an amended declaration under the UCCJA on August 30, 1994.

On June 29, 1994, Inspector Ron McCurdy of the Santa Clara County District Attorney's Office sent copies of the documents to Ms. Torres by facsimile transmission (fax). Mr. McCurdy also transmitted a copy of the documents to Ms. Torres's home in Reading, Pennsylvania, by United Parcel Service (UPS) Next Day Air Letter Delivery. Accompanying the documents was a letter from Mr. McCurdy asking Ms. Torres to contact him immediately to acknowledge receipt of all the pages of the transmission.

On or about June 30, 1994, Ms. Torres acknowledged to Mr. Torres that she had received the documents. In a subsequent submission in the trial court, Ms. Torres admitted she received the UPS mailing from Mr. McCurdy and that she had numerous conversations with him following receipt of the documents. Additionally, on July 14, 1994, counsel for Ms. Torres, David M. Pouliot, specially appeared in superior court to assert that Ms. Torres had not been legally served with the action, and that the court therefore had no jurisdiction to proceed with the action. However, Mr. Pouliot acknowledged in argument that she had received copies of the documents by fax.

On July 11, 1994, Ms. Torres filed an action in the Court of Common Pleas of Berks County, Pennsylvania, for divorce and for custody of the parties' minor children. On July 14, 1994, copies of the Pennsylvania pleadings were personally served on Mr. Torres.

On October 21, 1994, the California and Pennsylvania trial courts conferred by telephone as permitted by the UCCJA (§§ 3406, 3407, subd. (d)).[2] The two courts agreed that: (1) California would retain jurisdiction of the custody action; (2) Pennsylvania would relinquish jurisdiction of the custody action to California; (3) the custody action would proceed as Alameda County No. H-1771275, and the Pennsylvania court would vacate any orders made in the Berks County proceeding. On November 9, 1994, the Pennsylvania court issued an order vacating its prior temporary order of July 11, 1994, and relinquishing child custody jurisdiction to California, pursuant to the UCCJA, and the federal Parental Kidnapping Prevention Act (PKPA) (28 U.S.C. § 1738A).

---

[1] All further statutory references are to the California Family Code unless otherwise indicated.

[2] Section 3407, subdivision (d) states: "Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to ensuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties."

On December 6, 1994, January 3, 1995, December 7, 1995, and February 21, 1996, the California court ordered that the Torres children be returned to California immediately. On May 15, 1996, Ms. Torres was personally served at her home in Reading, Pennsylvania, with these orders.

On July 8, 1996, Ms. Torres specially appeared through counsel to file a motion for an order quashing the purported June 29, 1994, service of summons. She claimed the court lacked personal jurisdiction over her for lack of proper service of process. She further asserted California is an "inconvenient forum" and, pursuant to section 3407, subdivisions (a) and (c), should decline to exercise its jurisdiction over the custody action. By order dated October 9, 1996, the motion was denied. The court reaffirmed it has personal jurisdiction over Ms. Torres, but made no additional findings.

On October 14, 1996, Mr. Torres requested that Ms. Torres's default be entered because she had failed to respond to his 1994 service of summons. The request was served on Ms. Torres by mail at her home in Pennsylvania. On November 15, 1996, a judgment by default was entered against Ms. Torres, setting forth that jurisdiction was obtained on June 29, 1994. Also on November 15, 1996, notice of entry of judgment was served by mail on Ms. Torres through her counsel, Freda Pechner, at 4661 Marshall Road, Garden Valley, California. It was further ordered that Mr. Torres would have legal and physical custody of the children subject to Ms. Torres's rights of visitation.

Mr. Torres's counsel received a petition for writ of mandate from Ms. Torres's counsel on or about January 10, 1997, which was filed in this court on January 13, 1997, as No. A076871. Ms. Torres also filed the instant appeal from the default judgment. Her notice of appeal was dated January 9, 1997, but was not filed by the Clerk of the Alameda County Superior Court until January 24. On February 21, 1997, Ms. Torres's petition for writ of mandate was denied.

Ms. Torres then filed an ex parte application in this court on March 17, 1997, seeking an order to stay enforcement of the child custody orders by the Alameda County Superior Court, pending determination of the instant appeal. On March 20, Mr. Torres asked us to deny Ms. Torres's ex parte application. On March 24, we issued an order denying Ms. Torres's ex parte application, explaining that no change of circumstance justifying reconsideration had been presented.

In a letter to this court, dated November 12, 1997, counsel for Mr. Torres advised this court that, on July 10, 1997, Ms. Torres filed a notice of motion

with the Superior Court of Alameda County, seeking modification of the existing custody and visitation order, but in addition, and for the first time, requesting child support. Ms. Torres attached a declaration stating that, on May 13, 1997, Mr. Torres had traveled to Pennsylvania, took the children from their school after showing the principal custody orders from the Alameda Superior Court, and brought them to California.

## II. DISCUSSION

Ms. Torres has asserted throughout this proceeding that the Pennsylvania courts have subject matter jurisdiction over this child custody dispute, and that the California court should not have assumed jurisdiction to enter any custody orders because she was never properly served with the petition and summons for the California action, and because, pursuant to section 3407, California is an inconvenient forum.[3] She further asserts that her appearance in the Alameda County Superior Court in July 1997, to seek modification of the existing custody and visitation orders and to request child support, did not amount to voluntary submission to the jurisdiction of the California court. As we will point out, she is mistaken on all counts.

### A. Pursuant to the UCCJA and the PKPA, California Has Exclusive Subject Matter Jurisdiction to Enter Custody Orders in This Case.

Where a California court is called upon to make an interstate child custody and visitation determination, the provisions of the UCCJA apply. (*In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436, 1441 [16 Cal.Rptr.2d 238].) The purposes of the UCCJA are set forth in section 3401, and include "avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states." (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 695 [186 Cal.Rptr. 772, 652 P.2d 1003]; see also § 3403; Ratner, *Child Custody in a Federal System* (1964) 62 Mich. L.Rev. 795.) California and Pennsylvania are both signatories to the UCCJA. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 695, fn. 5; *Barndt* v. *Barndt* (1990) 397 Pa.Super. 321 [580 A.2d 320, 322].)

One of the several bases for child custody jurisdiction under the California UCCJA is section 3403, subdivision (a)(1). Under that provision, California

---

[3]It is not clear whether Ms. Torres is actually raising the issue of subject matter jurisdiction in this appeal. At a minimum, she has intertwined arguments about personal and subject matter jurisdiction. Out of an abundance of caution, and insofar as we are able to decipher her arguments, we will address Ms. Torres's claims of error on both questions.

family law courts have "jurisdiction to make a child custody determination by initial or modification decree" if California was the "home state" of the child at the commencement of the proceedings (§ 3403, subd. (a)(1)(A)), or "had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody of the child . . . , and a parent . . . continues to live in this state." (*Id.*, subd. (a)(1)(B); see also *In re Marriage of Zierenberg, supra,* 11 Cal.App.4th at p. 1443.) " 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." (§ 3402, subd. (e).) The commencement of a proceeding is the date the action is filed. (*In re Janette H.* (1987) 196 Cal.App.3d 1421, 1429 [242 Cal.Rptr. 567].)

 When Mr. Torres filed his action on June 24, 1994, the California court clearly had "home state" jurisdiction pursuant to section 3402, subdivision (e), and section 3403, subdivision (a)(1)(B). The parties' children, Simon and Matthew, lived in California continuously from their respective dates of birth until April 8, 1994. At the time of filing, the children had been out of California for only 77 days, or less than 6 calendar months. Thus, under the California UCCJA, the California courts had subject matter jurisdiction over this custody dispute at the commencement of the action. A finding of "home state" jurisdiction in this case was also entirely consistent with the PKPA. (28 U.S.C. § 1738A(c)(1) & (2)(A)(ii).)

There remain the questions whether Pennsylvania may have had concurrent subject matter jurisdiction, or could have assumed jurisdiction to enter or modify custody orders of the California court sometime after the action commenced in this state. Concurrent jurisdiction is possible because, unlike other states that have more clearly "prioritized" the bases for child custody jurisdiction (see, e.g., *Brown* v. *Brown* (Tenn. 1993) 847 S.W.2d 496, 501),[4] the California and Pennsylvania versions of the UCCJA provide several distinct, alternative grounds for a finding of subject matter jurisdiction,

---

[4]The Tennessee version of the UCCJA, for example, provides for child custody jurisdiction in "only one state at a time" (*Brown* v. *Brown, supra,* 847 S.W.2d at p. 501), by allowing " 'significant connection' " jurisdiction *only if "no other state qualifies* as the child's 'home state', or . . . the 'home state' has declined to exercise jurisdiction and deferred to Tennessee as 'the more appropriate forum to determine the custody of the child.' " (*Brown* v. *Brown, supra,* 847 S.W.2d at p. 500, italics in original, citing Tenn. Code Ann. § 36-6-203(a)(2)(A) & (3).) In this regard, the Tennessee statute is " 'non-uniform' with the original UCCJA in one very important respect." (*Brown* v. *Brown, supra,* 847 S.W.2d at p. 500.) As we will

which appear to be of equal weight and may simultaneously exist in more than one state. (See § 3403, subd. (a)(1)-(3); 23 Pa. Cons. Stat. Ann. [hereafter Pa.C.S.A.] § 5344(a)(1), (2), & (3).) There is also the question whether California has continuing exclusive jurisdiction of the parties' custody dispute. To answer these questions, we must examine the statutes of Pennsylvania, as well as the PKPA. (*Brossoit* v. *Brossoit* (1995) 31 Cal.App.4th 361, 367 [36 Cal.Rptr.2d 919] [statutes of involved states and PKPA govern interstate custody dispute].)

When Ms. Torres filed a competing custody petition in Pennsylvania in July 1994, it is clear that that state did not qualify as the children's "home state" under its own version of the UCCJA which is, in this respect, virtually identical to the California version.[5] (23 Pa.C.S.A. §§ 5343, 5344(a)(1); see also *Dincer* v. *Dincer* (Pa. 1997) 701 A.2d 210, 213-214.) However, Ms. Torres argued to the Pennsylvania court—with apparent success—that the Pennsylvania court had "best interest" or "significant connection" jurisdiction under the Pennsylvania UCCJA. (See 23 Pa.C.S.A. § 5344(a)(2).)[6]

Nevertheless, Pennsylvania should have declined to exercise jurisdiction pursuant to the Pennsylvania UCCJA because "at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with [the UCCJA]," and that proceeding had not been "stayed by the court of the other state because [Pennsylvania] is a more appropriate forum or for other reasons." (23 Pa.C.S.A. § 5347(a).) Under the PKPA, too, the Pennsylvania court was required to decline jurisdiction because Ms. Torres's action in Pennsylvania was "commenced during the pendency of a proceeding in a court of another [s]tate where such court of that other [s]tate [was] exercising jurisdiction consistently with the provisions of [the PKPA] to make a custody determination." (28 U.S.C. § 1738A(g).)

---

discuss, in this regard, the Tennessee statute is also "identical to the jurisdiction provision in the PKPA." (*Id.* at p. 501.)

[5]Apparently recognizing this problem, Ms. Torres contends that Pennsylvania was the children's "home state" in July *1996*, when she filed her motion to quash purported service of summons in Alameda County Superior Court. In order to argue that the Pennsylvania court thus obtained exclusive jurisdiction over this action, Ms. Torres simply ignores all the intervening proceedings, during which the California court rejected her claims about improper service of process, and the California and Pennsylvania courts jointly—and correctly—resolved the issue of subject matter jurisdiction in favor of California.

[6]In relevant part, the Pennsylvania UCCJA provides: "A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: . . . [¶] . . . [¶] (2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because: [¶] (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and [¶] (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child . . . ." (23 Pa.C.S.A. § 5344.) This provision is substantially identical to section 3403, subdivision (a)(2) of the California UCCJA.

Even more fundamentally, however, the Pennsylvania court could not make a "child custody determination" consistently with the PKPA because of California's "home state" jurisdiction. (28 U.S.C. § 1738A(c)(2)(B)(i).) That is, pursuant to the PKPA, although the Pennsylvania court may have had "significant connection" jurisdiction under the Pennsylvania UCCJA, it could make enforceable child custody orders "*only if*" no other state was the "home state" of the children. (28 U.S.C. § 1738A(c)(2)(B), italics added.) Indeed, as the Pennsylvania courts have recognized, the PKPA grants priority to "home state" jurisdiction, and preempts contrary state law in this respect. (*Barndt* v. *Barndt, supra,* 580 A.2d at p. 326, citing 28 U.S.C. § 1738A(c)(2)(A) & (B); see also *In re Marriage of Pedowitz* (1986) 179 Cal.App.3d 992, 999-1000 [225 Cal.Rptr. 186] [PKPA preempts California UCCJA to the extent it conflicts with the federal statute].)

Of course, both California's and Pennsylvania's versions of the UCCJA provide a mechanism for resolving jurisdictional disputes such as the one that arose in this case and, to the credit of the judicial officers involved, that mechanism was put to good use in this case. (§§ 3406, 3407, subd. (d); 23 Pa.C.S.A. § 5347(c).) Accordingly, the courts conferred by telephone to settle the issue in October 1994. At that point, the Pennsylvania court properly relinquished jurisdiction, and vacated all its prior orders. The California court properly retained jurisdiction and proceeded to enter custody orders.

We conclude that this resolution of the parties' dispute over subject matter jurisdiction was and is entirely consistent with the California UCCJA and the PKPA. Furthermore, under the clear guidance of the PKPA, California has exclusive *continuing* jurisdiction of this custody action. So long as a state has subject matter jurisdiction to enter an initial decree under the laws of that state and the PKPA, and the state remains the residence of the child *or any contestant*, that state has exclusive continuing jurisdiction over all custody decisions involving that child. (28 U.S.C. § 1738A(a), (c)(1), (c)(2)(A)(ii), (c)(2)(E), (d); *Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 698; see also *Barndt* v. *Barndt, supra,* 580 A.2d at p. 326.) There is no dispute that Mr. Torres is a "contestant" in this action and has remained at all times a resident of California. Thus, unless and until Mr. Torres changes his residence, or there is a finding of some other basis for terminating or relinquishing that jurisdiction, California retains exclusive jurisdiction of the parties' custody dispute.

Of course, Ms. Torres has suggested that California should have declined its jurisdiction in this matter because it is an inconvenient forum since she lives in Pennsylvania and, apparently, cannot afford to come to California to

litigate the case.[7] In support of this argument, Ms. Torres cites section 3407 which states, in pertinent part: "(a) A court which has jurisdiction under this part to make an initial . . . decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. [¶] . . . [¶] (c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. . . ." Section 3407, subdivision (c), lists the following factors for the court's consideration when deciding a question of inconvenient forum: "(1) If another state is or recently was the child's home state. [¶] (2) If another state has a closer connection with the child and the children's family or with the child and one or more of the contestants. [¶] (3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state. [¶] (4) If the parties have agreed on another forum which is no less appropriate. [¶] (5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes [of the UCCJA]."

Presumably, Ms. Torres's argument is that the California court abused its discretion by refusing to relinquish jurisdiction to Pennsylvania since she and the children lived in the latter state without visitation or financial support from Mr. Torres from April 1994 until he removed them from Pennsylvania in May 1997 pursuant to the orders of the California court. (See *In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 870 [225 Cal.Rptr. 823] [where two states have concurrent jurisdiction, a court's decision whether to decline jurisdiction as an inconvenient forum is a discretionary determination].) She argues that there is, therefore, a "closer connection" with Pennsylvania, within the meaning of section 3407, subdivision (c)(2). Also, Ms. Torres describes Pennsylvania as the place where the children's future care and protection are most assured, as contemplated by section 3407, subdivision (c)(3).

Even if we were to agree with Ms. Torres on these points, we would conclude she has overlooked numerous other facts that make California *at least* as appropriate as Pennsylvania as a forum for this action under a section 3407, subdivision (c)(3) analysis. California unquestionably was the children's "home state" at the inception of the action, had been so for many

---

[7]She also appears to contend that the California court never had *subject matter* jurisdiction because it never obtained *personal* jurisdiction over her through proper service of process. As we discuss in part II.B., *post,* the notice requirements of the UCCJA and the due process clause were satisfied in this case and Ms. Torres's claim of lack of personal jurisdiction is without merit.

years before the commencement of proceedings, and likely would have been so thereafter but for the fact Ms. Torres removed them to Pennsylvania without first obtaining an appropriate custody determination. As we have discussed, this factor is given priority in a determination of which forum is most appropriate. (See 28 U.S.C. § 1738A(c)(2)(A) & (B); *Barndt* v. *Barndt, supra,* 580 A.2d at p. 326.) Moreover, throughout the proceedings, the children's father, Mr. Torres, has lived and worked in California. Ms. Torres's complaints about the lack of visitation between the children and their father, and Mr. Torres's lack of support, fails to consider that her own conduct in removing the children from California caused, or at least contributed to, the loss of contact. Mr. Torres, on the other hand, promptly commenced a custody action in California and is prepared to care for his children in this state. Thus, the children are closely connected with California, and their future custodial and educational needs can be met in this state. Finally, one of the general purposes of the UCCJA is to avoid jurisdictional competition in child custody matters. (§ 3401, subd. (a)(1).) The parties have thoroughly litigated the jurisdictional issues, and the California and Pennsylvania courts have conferred and agreed that California should retain jurisdiction in this case. It would be contrary to the intent of both the UCCJA and the PKPA to revisit the issue yet again. It was not, in any event, an abuse of discretion when the trial court declined to relinquish jurisdiction to the Pennsylvania court based on Ms. Torres's inconvenient forum arguments.

B. *Ms. Torres Had Adequate Notice of This Custody Proceeding, Pursuant to Section 3405.*

■ Ms. Torres's principal contention on appeal is that the trial court erred when it refused to quash service of summons, as she requested by motion in July 1996. Ms. Torres argues that service of the summons and petition was defective and that, therefore, the California court never obtained personal jurisdiction over her. She contends it would violate due process to allow entry and enforcement of any judgment against her by a California court in these circumstances. We disagree.

■ The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard. Personal jurisdiction over the parents is not required to make a binding custody determination, and a custody decision made in conformity with due process requirements is entitled to recognition by other states under both the UCCJA's requirement of comity and the standards of the full faith and credit clause of the United States Constitution. (*In re Marriage of Leonard* (1981) 122 Cal.App.3d 443, 459 [175 Cal.Rptr. 903].)

Notice requirements for a custody proceeding in California when a party is out of state are established by statute, which provides, in relevant part, that notice "*shall* be given in a manner reasonably calculated to give actual notice" (§ 3405, subd. (a), italics added), and *may* be made "[b]y personal delivery" (*id.,* subd. (a)(1)), or "[b]y any form of mail addressed to the person to be served and requesting a receipt" (*id.,* subd. (a)(3)), or "[a]s directed by the court" (*id.,* subd. (a)(4)).

Ms. Torres argues that section 3405, subdivision (a)(3) requires service by United States mail with return receipt requested as prescribed by the Code of Civil Procedure, that no other manner of "mail" service will suffice, and that no other manner of service was directed by the court.[8] In other words, she claims that no legal service of process took place because delivery via UPS or fax has never been held to be a proper method for service of process under California law and that, therefore, the California court never obtained personal jurisdiction over her to make any enforceable custody orders. We reject this argument.

Section 3405, subdivision (a) requires that notice be "given in a manner reasonably calculated to give actual notice," but also permits the giving of notice by a variety of methods at the option of the notice-giver. (§ 3405, subd. (a).) As to proof of service, section 3405, subdivision (c) states: "If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee." Ms. Torres fails to recognize that the rules for giving notice for UCCJA custody proceedings are not as detailed and stringent[9] as the rules for service of summons and proof of service in ordinary civil actions. (Cf. Code Civ. Proc., §§ 415.40 [service of summons on a person outside this state by "first-class mail, postage prepaid, requiring a return receipt"], 417.20 [specific methods for proving service of summons in civil action, including a "written admission of the party"].) The more relaxed notice requirements of the UCCJA contribute to the UCCJA's stated objective of "[d]iscourag[ing] continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child." (§ 3401, subd. (a)(4).)

---

[8]Ms. Torres relies on section 2331, which provides: "A copy of the petition, together with a copy of a summons, in form and content approved by the Judicial Council shall be served upon the other party to the marriage in the same manner as service of papers in civil actions generally." However, that provision establishes service requirements for the dissolution petition, and says nothing about notice of a custody determination. Where residents of more than one state are involved in the latter type of proceeding, the giving of notice to an out-of-state party is governed by the UCCJA, i.e., by section 3405.

[9]We recognize that the *Leonard* court described the UCCJA's notice requirements as "stringent." (122 Cal.App.3d at p. 458.) However, the court did not have before it a challenge to the form of notice given, as we do here, and the comment was, therefore, dictum.

Thus, while service by UPS in an ordinary civil action may not satisfy the standards set forth by the Code of Civil Procedure, notice sent by UPS, next day air letter delivery, is arguably service by "any form of mail," and is most certainly "given in a manner reasonably calculated to give actual notice" as required by section 3405. In this case, the chosen method was not only "reasonably calculated to," but actually did give the out-of-state parent prompt and effective notice of the impending custody determination. There is no case law holding or suggesting that service of a out-of-state parent via UPS overnight mail delivery is *im*proper in an action under the relaxed notice requirements of the UCCJA. Similarly, under section 3405, subdivision (c), the oral acknowledgment by Ms. Torres's counsel of Ms. Torres's receipt of the documents Mr. McCurdy sent to her was sufficient proof of service. Even more persuasive were Ms. Torres's own oral and written admissions regarding receipt of the summons and other court documents. In sum, the trial court had before it ample evidence that Ms. Torres had adequate notice of the custody proceedings as required by section 3405. Accordingly, she was not deprived of due process of law and the trial court did not err by denying her motion to quash service of process.

C. *Ms. Torres Voluntarily Submitted to the Jurisdiction of the Alameda County Superior Court.*

■ Of course, even without proper notice, a general appearance will cure any defect in service. As stated in the relevant portion of the UCCJA: "Notice is not required if a person submits to the jurisdiction of the court." (§ 3405, subd. (d).)

On July 10, 1997, Ms. Torres filed a notice of motion with the Alameda County Superior Court in which she sought a modification of the existing custody and visitation order and, for the first time, requested child support. Ms. Torres asserts that this filing does not constitute a general appearance in the California court. Instead, she characterizes her action as a special appearance to request return of her children to her, citing *In re Marriage of Fitzgerald & King* (1995) 39 Cal.App.4th 1419 [46 Cal.Rptr.2d 558] to support her claim. In that custody proceeding, the appellant mother, a resident of Texas, appeared in California only to oppose order-to-show-cause applications for temporary relief brought while her motion to quash service was pending. (*Id.* at pp. 1422-1423.) The court held that the nonresident mother did not consent to jurisdiction by the California courts for two reasons: (1) Section 2012 authorizes a party who has filed a motion to quash service of summons to respond to pendente lite orders, and (2) pursuant to the UCCJA, a nonresident parent is permitted to contest custody and visitation orders without subjecting herself to the court's general jurisdiction. (*In*

*re Marriage of Fitzgerald & King, supra,* 39 Cal.App.4th at pp. 1430-1431.) In that case, the mother's modest requests related to child custody and visitation issues. (*Ibid.*)

The facts and procedural posture of the present case are readily distinguishable from those in *In re Marriage of Fitzgerald & King* in that Ms. Torres did not simply confine herself to challenging the court's custody determination, but sought affirmative relief in the form of child support. The UCCJA defines "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights; *it does not include a decision relating to child support or any other monetary obligation of any person.*" (§ 3402, subd. (b), italics added.) By seeking affirmative relief with respect to financial support issues, instead of simply contesting the pendente lite orders relating to custody and visitation, Ms. Torres brought the case outside the UCCJA, making her appearance in the action general. It is a long-standing rule that, if the moving party does not confine herself to the objection of lack of jurisdiction over her person, but seeks affirmative relief on the merits, her application may be deemed a general appearance regardless of its designation. (See 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 199, pp. 764-765, citing *Security etc. Co.* v. *Boston etc. Co.* (1899) 126 Cal. 418, 422 [58 P. 941].) We conclude that, by seeking child support, Ms. Torres has generally appeared in the Alameda County Superior Court, thereby voluntarily submitting herself to its jurisdiction. Thus, Ms. Torres's claims of defective notice, and lack of personal jurisdiction over her, are rendered moot and of no consequence.

### III. CONCLUSION

For all the foregoing reasons, the judgment of the trial court is affirmed.

Corrigan, J., and Walker, J., concurred.